IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK07-80185 |
| | ) | |
| RODNEY LEE WHITMARSH and | ) | CH. 13 |
| DEBRA KAY WHITMARSH, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

## **ORDER**

Hearing was held in Omaha, Nebraska, on December 3, 2007, on a Motion for Sanctions for Violation of the Automatic Stay filed by Debtors (Fil. # 55), and an Objection by GMAC Mortgage (Fil. # 61). Howard Duncan appeared for Debtors, and Garry McCubbin appeared for GMAC Mortgage.

Debtors are seeking sanctions for multiple asserted violations of the automatic stay. GMAC Mortgage is the mortgage loan servicer for Washington Mutual Bank, the holder of the first mortgage on Debtors' residence located at 11121 Westover Road, Omaha, Nebraska ("Property"). Debtors filed this case under Chapter 7 of the Bankruptcy Code on February 5, 2007. In their initial filing, Debtors stated their intent to surrender the Property. Debtors converted their bankruptcy to a proceeding under Chapter 13 on June 4, 2007. In each of their filed plans, Debtors stated that they have surrendered the Property to the lender.

Washington Mutual received relief from the automatic bankruptcy stay on March 14, 2007. The motion specifically requested relief from stay to proceed with foreclosure proceedings and "to provide debtors with information regarding a potential Forbearance Agreement, Loan Modification, Refinance Agreement or other loss mitigation agreements . . ." On April 25, 2007, the attorney for Debtors sent a letter to the attorney for Washington Mutual/GMAC advising that Debtors would be vacating the Property on April 27, 2007. On May 29, 2007, the attorney for Debtors sent a letter to the attorney for Washington Mutual advising that the keys and garage door opener for the Property could be picked up at his office. On at least three occasions (May 29, 2007, August 9, 2007, and August 13, 2007), the attorney for Debtors wrote to GMAC to advise that Debtors had surrendered the Property, that direct contact with Debtors should cease, and that any future contact should be made through the office of the attorney.

Despite the foregoing, Debtors assert that they received at least 11 different letters and other mailings from GMAC from May 16, 2007, through December 5, 2007, and they also received approximately 22 phone calls from GMAC between April 2007 and October 2007.

The automatic stay of 11 U.S.C. § 362(a) prohibits any entity from taking action "to collect, assess, or recover a claim against the debtor that arose before the commencement of a case." 11 U.S.C. § 362(k)(1) provides that an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate

circumstances, may recover punitive damages. Debtors assert that nine of the 11 letters constitute demands for payment and violations of the automatic stay. Further, Debtors assert that the numerous phone calls also constitute stay violations.

A close review of the letters, however, reveals that none of those letters clearly constitutes a prohibited demand for payment. The lender had received relief from stay to foreclose and to offer alternatives to foreclosure. In addition to offering alternatives to foreclosure (which Debtors agree was authorized), the letters appear to be letters of the type that had to be sent for the lender to be in compliance with state foreclosure law and/or contract law, letters required by federal collection (Fair Debt Collection Practices Act) law and federal law (RESPA) regarding the status of Debtors' escrow account, and letters simply advising Debtors as to the status of the loan. The lender even included a special paragraph regarding bankruptcy in some of the letters to avoid any confusion. The lender could not risk failing to comply with state, federal, and contract law simply because Debtors had stated an intention to surrender the Property. Until the lender completed the foreclosure, it had to comply with applicable law. Thus, I do not believe that the entry of an order of damages and/or sanctions is appropriate with regard to the specific letters identified by Debtors.

On the other hand, the many phone calls (approximately 22 or more) received by Debtors following the granting of relief from the automatic bankruptcy stay are much more problematic. The phone calls to Debtors were not required by state or federal law. Also, GMAC Mortgage (as mortgage loan servicer for Washington Mutual Bank) was notified in writing on several occasions that Debtors had surrendered the Property and that the lender should cease all further contact directly with Debtors. To the extent any further contact was necessary, GMAC was notified that it should be directed to the attorney's office.

It is unclear why GMAC chose to make so many phone calls and to leave so many messages with Debtors. It may very well be that the lender was simply trying to contact Debtors to be sure Debtors were fully aware of all of their options to avoid foreclosure. However, it does not take 22 calls to do so, and many of the phone calls threatened to take legal action. Furthermore, Debtors (through their attorney) made it very clear that the lender should discontinue such contacts and the lender was fully aware that Debtors had vacated and surrendered the Property. Perhaps the individuals making the phone calls on behalf of GMAC did not know any better, but as an institution, GMAC Mortgage is certainly aware of the limitations it has on attempting to collect a debt once bankruptcy has been filed. Relief from the automatic stay was granted solely for the purpose of allowing foreclosure (and in this case, authorizing the provision of notice to Debtors regarding loss mitigation opportunities). A phone call or two to follow up a letter regarding loss mitigation efforts is understandable. Twenty-two or more phone calls after Debtors had clearly stated their intention to surrender the Property is simply not excusable and does constitute violation of the automatic stay.

Debtors have suffered actual damages in the form of attorney's fees and costs for this proceeding, and have also endured mental anguish, stress, and inconvenience caused by GMAC's violation of the automatic stay. However, I decline to enter a per-violation sanction as requested by Debtors (although such a remedy may be available to Debtors under state or federal collection laws).

   IT IS, THEREFORE, ORDERED that GMAC has violated the automatic stay of § 362(a). GMAC shall, as a sanction for violation of the automatic stay, pay to Debtors the sum of $3,640.00 to reimburse them for their attorney's fees and costs incurred, plus an additional $1,000.00 to compensate Debtors for the stress and mental anguish caused by their repeated violations of the automatic stay. Such amount shall be paid within 15 days from the date of this order.

   DATED: January 7, 2008.

                 BY THE COURT:

                 /s Thomas L. Saladino
                 United States Bankruptcy Judge

Notice given by the Court to:
  *Howard Duncan
  Garry McCubbin
  Kathleen Laughlin
  U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.